# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

TANIS HALL,

    Plaintiff,

    v.

                    4:25-CV-214

MIDDLE GEORGIA BEHAVIORAL
SERVICES, LLC, d/b/a GEORGIA
SUPPORT SERVICES,

    Defendant.

## ORDER

Before the Court are four motions: Defendant's motion to dismiss for lack of jurisdiction, dkt. no. 6; Defendant's amended motion to dismiss, dkt. no. 11; Plaintiff's motion to deny Defendant's amended motion to dismiss, dkt. no. 14; and Plaintiff's motion for equitable tolling, dkt. no. 15. The motions have been briefed and are ripe for review. Dkt. Nos. 6-1, 7, 11-1, 12, 13, 14, 15. For the reasons set forth below, Defendant's amended motion to dismiss, dkt. no. 11, is **GRANTED in part** and **DENIED in part**, and the remaining motions, dkt. nos. 6, 14, 15, are **DENIED as moot.**

## BACKGROUND

This is a *pro se* action by Plaintiff Tanis Hall alleging employment discrimination based on her race, color, gender, and age. Dkt. No. 1 at 4-5. This case stems from an alleged adverse

hiring decision by the Savannah Office of Georgia Support Services, an entity controlled by Defendant Middle Georgia Behavioral Services, LLC.[1] Id. at 2–3.

According to the complaint, Defendant made a hiring decision adverse to Plaintiff on June 24, 2025, allegedly denying Plaintiff fair consideration before doing so. Id. at 4–5. More specifically, Plaintiff contends that she applied for a job as a "Support Coordinator" for Defendant's Savannah Office. Id. at 5. Pursuant to that application, Plaintiff completed an initial interview with Defendant on June 12, 2025, and a second interview was scheduled for June 24, 2025. Id.

The morning of June 24, 2025, however, Plaintiff spoke with an agent of Defendant, June McClure, who informed Plaintiff via telephone that Defendant would not be moving forward with the second interview. Id. Allegedly, Ms. McClure stated that the second interview was canceled because Defendant had become aware of an April 2025 indictment of Plaintiff and believed Plaintiff would be unable to pass a background check. Id. At 9:37 a.m. that same day, Defendant sent Plaintiff an email confirming the interview's cancelation and citing the same reasons for cancelation. Id. Plaintiff now challenges as discriminatory Defendant's choice to

---

[1] To the extent the Court references actions taken by "Defendant," it refers to Middle Georgia Behavioral Services, LLC's business dealings as "Georgia Support Services." See generally Dkt. No. 1.

consider records of arrest or indictment without conviction when making hiring decisions, contending that this has a disparate impact on African Americans, females, and individuals over forty years old, including Plaintiff herself. Id. at 4.

Following the cancelation of Plaintiff's interview, she filed a charge with the Equal Employment Opportunity Commission (EEOC) or an Equal Employment Opportunity counselor on June 26, 2025. Id. at 5. The EEOC sent Plaintiff notice of her right to sue on July 30, 2025. Id. at 5, 8–11. Plaintiff, proceeding *pro* se, filed this discrimination action on September 16, 2025, using federal form "Pro Se 7."[2] See generally id. Plaintiff's three-count complaint seeks compensation for alleged disparate impact employment discrimination under Title VII of the Civil Rights Act of 1964 (Count I); age discrimination under the Age Discrimination in Employment Act (Count II); and "[v]iolation of EEOC Guidance & Improper Employment Practice" (Count III).[3] Id. at 6.

---

[2] Form Pro Se 7 is a pre-structured form available to litigants seeking to file a *pro se* complaint for employment discrimination in a federal district court. See Robinson v. Chapters Health Sys., No. 8:24-CV-1659, 2024 WL 5671292, at *1 n.1 (M.D. Fla. Dec. 12, 2024) (explaining form), report and recommendation adopted, 2025 WL 4693236 (Apr. 28, 2025).

[3] The Supreme Court has stated that EEOC Guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance[.]" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (citations omitted). While not providing their own cause of action, these non-binding Guidelines are nonetheless relevant to the adjudication of an employment discrimination claim because they

In her complaint, Plaintiff alleges that Defendant denied her an opportunity for employment based on a prior indictment without conducting an official background check or extending a conditional offer of employment. Id. at 5. Plaintiff challenges the timing and manner of the interview cancelation, further alleging that Defendant's reasoning contradicted standard hiring practices and EEOC guidance, leading to a disparate impact on African American applicants, female applicants, and applicants over the age of forty. Id.

On October 21, 2025, Defendant entered a special appearance in this case and moved to dismiss the complaint for insufficient process, insufficient service of process, and lack of personal jurisdiction, dkt. no. 6, which is still pending before the Court. no. 6. On December 3, 2025, however, Defendant filed an amended motion to dismiss, dkt. no. 11, and Plaintiff responded in opposition, dkt. nos. 12, 13. Following her response in opposition, Plaintiff also moved for entry of a proposed order denying Defendant's amended motion to dismiss, dkt. no. 14. Defendant did

provide interpretive guidance regarding types of conduct which may violate Title VII. Id.; Harding v. Winn-Dixie Stores, Inc., 907 F. Supp. 386, 389 n.1 (M.D. Fla. 1995). Accordingly, construing the complaint liberally, the Court interprets the allegation that Defendant violated EEOC Guidelines highlighted in Count III as part of Plaintiff's Title VII claim in Count I, rather than a standalone claim. United States v. Ogiekpolor, 122 F.4th 1296, 1304 (11th Cir. 2024) ("We liberally construe pro se filings.").

not respond to this motion. Finally, Plaintiff also filed a motion for equitable tolling, dkt. no. 15. Defendant did not respond to this motion, either.

**LEGAL STANDARD**

Though four motions are pending before the Court, all four motions relate to whether Plaintiff's complaint should survive dismissal at this procedural juncture. Dkt. Nos. 6, 11, 14, 15. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." When determining whether a complaint satisfies Rule 8, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348-49 (11th Cir. 2016) (citing Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). Legal conclusions, on the other hand, are not entitled to the same presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In other words, the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Id. Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware

Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

The core inquiry at the motion to dismiss stage is whether the complaint contains sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This means that the complaint must contain sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this is not a probability requirement, a complaint must give rise to "'more than a sheer possibility' that the plaintiff's allegations are true." Gissendaner v. Comm'r, 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

When the complaint is filed by a *pro se* litigant, the pleading must still include enough factual allegations to "raise a right to relief above the speculative level." Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted). "[A] *pro se* pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). But, at the same time, a *pro se* complaint is "held to a less stringent standard than a pleading drafted by an attorney" and must be liberally construed. Id.; Saunders, 766 F.3d at 1266.

## DISCUSSION

After a review of the record, the case's procedural history, governing law, and the parties' arguments regarding each of the four motions presently before the Court, the Court holds that Defendant's original motion to dismiss, dkt. no. 6, is **DENIED as moot,** and Defendant's amended motion to dismiss, dkt. no. 11, is **GRANTED in part** and **DENIED in part**. The remaining two motions before the Court, dkt. nos. 14, 15, are also **DENIED as moot.**

### I.    Defendant's Original Motion to Dismiss

Two motions to dismiss filed by Defendant are currently pending in this action: Defendant's first motion to dismiss, dkt. no. 6, and Defendant's amended motion to dismiss, dkt. no. 11. In the original motion to dismiss, Defendant seeks dismissal of the complaint for insufficient process, insufficient service of process, and lack of personal jurisdiction. Dkt. Nos. 6, 6-1. The first motion to dismiss also presents arguments for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 6, 6-1.

While that motion was pending, Defendant filed an "amended and restated" motion to dismiss, though Defendant did not request leave to amend its motion before doing so. Dkt. No. 11. In this amended motion to dismiss, Defendant seeks to withdraw the previously asserted defenses for lack of personal jurisdiction, lack of process, and lack of service of process. Dkt. No. 11; Dkt.

7

No. 11-1 at 2. Defendant does not, however, withdraw its previous arguments under Rule 12(b)(6), instead electing to restate those arguments in its second motion. Compare Dkt. No. 6-1 at 4–6, with Dkt. No. 11-1 at 7-10 (presenting nearly identical arguments surrounding Plaintiff's purported failure to state a claim).

First, the Court will exercise its authority to consider the amended motion to dismiss, dkt. no. 11. See Tucker v. Blackfisk Marine, LLC, No. 22-61953-CIV, 2023 WL 1429762, at *2 (S.D. Fla. Feb. 1, 2023) (addressing request for leave to amend motion). Other district courts in this circuit have addressed whether it is proper to allow amendments to motions, highlighting, at the outset, that "a motion to dismiss is not a pleading within the meaning of Rule 15(a)"—the Federal Rule of Civil Procedure governing amendments to pleadings. Vanslambrouck v. Fairfield Indus. Inc., No. 2:11-CV-76-FTM-29SPC, 2011 WL 2435947, at *1 (M.D. Fla. June 15, 2011) (citations omitted); see also Tucker, 2023 WL 1429762, at *2 (quoting Vanslambrouck, 2011 WL 2435947, at *1). Nor is there a Federal Rule of Civil Procedure "specifically addressing amendments to motions to dismiss." Vanslambrouck, 2011 WL 2435947, at *1. This being so, district courts do possess the inherent authority to control the proceedings before them, Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002), and the Federal Rules of Civil Procedure are to "be construed and administered by the [C]ourt . . . to secure the just,

8

speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1; <u>Vanslambrouck</u>, 2011 WL 2435947, at *1.

Accordingly, the Court holds that it is well within its authority to allow Defendant to amend the motion to dismiss. <u>Vanslambrouck</u>, 2011 WL 2435947, at *1 (same). The Court finds no bad faith, intent to manipulate the Court's proceedings, or prejudice to Plaintiff. <u>Id.</u> In fact, the primary effect of the amendment to the motion to dismiss is to withdraw previous jurisdictional, process, and service of process arguments against Plaintiff, leaving Rule 12(b)(6) as the basis for the amended motion. Dkt. No. 11; Dkt. No. 11-1 at 2. Further, while Plaintiff opposes the *substantive arguments* in the amended motion to dismiss, dkt. nos. 12, 13, Plaintiff does not contend that amendment of that motion is improper or otherwise prejudicial.

As a result of the amended motion, Defendant now rescinds three of the four bases upon which it originally sought dismissal (Rules 12(b)(2), 12(b)(4), and 12(b)(5)). Dkt. Nos. 6, 6-1, 11, 11-1. The remaining Rule 12(b)(6) argument which has not been withdrawn is restated in the amended motion to dismiss. Dkt. Nos. 6, 6-1, 11, 11-1. As a result, Defendant's original motion to dismiss, dkt. no. 6, is **DENIED as moot.**

## II.  Defendant's Amended Motion to Dismiss and Plaintiff's Related Motion for Equitable Tolling

The arguments in Defendant's amended motion to dismiss are twofold. See generally Dkt. Nos. 11, 11-1. First, Defendant contends that Plaintiff's Title VII and ADEA claims are barred by the applicable statute of limitations. Dkt. No. 11-1 at 4-6. Second, Defendant states Plaintiff has not plausibly alleged discrimination based on race, color, gender, or age, warranting dismissal. Id. at 8-10. While Plaintiff maintains that her action is both timely and sufficiently pled, dkt. nos. 12, 13, she also moves for equitable tolling should the Court conclude her claims are barred on statute of limitations grounds, dkt. no. 15. The Court holds that, while the statute of limitations does not bar Plaintiff's claims, the allegations in the complaint fall short of federal pleading requirements.

### A.    Statute of Limitations and Equitable Tolling

Defendant's first principal argument for dismissal hinges on the ninety-day statute of limitations governing Title VII and ADEA claims. Dkt. No. 11-1 at 4-6. Under both Title VII and the ADEA, a plaintiff must assert her claims within ninety days of her receipt of a right-to-sue letter. See Miller v. Georgia, 223 F. App'x 842, 845 (11th Cir. 2007) (citing 42 U.S.C. § 2000e-5(f)(1); Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991)). In her complaint, Plaintiff indicates that she

received a right-to-sue letter from the EEOC on July 30, 2025, dkt. no. 1 at 5. This aligns with the contents of the right-to-sue letter itself, which was attached to the complaint, as the letter states that it was issued that same day: July 30, 2025. Id. at 8. This is the starting point for the ninety-day limitations period.

With this start date in mind, the primary dispute between the parties rests on the applicable statute of limitations end date. Specifically, Defendant contends that the action should not be deemed "commenced" for statute of limitations purposes until November 12, 2025, the date that, according to Defendant, Plaintiff perfected service of process. Dkt. No. 11-1 at 4. In reaching this conclusion, Defendant states that "service in this case is governed by the requirements of state law," which, in this case, is Georgia's law on the timing of service of process. Id. at 5. Plaintiff maintains that Defendant's reliance on Georgia's service-timing rules is misplaced, stating that such state requirements "do *not* apply in federal-question employment-discrimination suits." Dkt. No. 12 at 1 (emphasis in original). Plaintiff instead states that the action was "commenced" on September 16, 2025—the day she filed her complaint in this Court. Id.; Dkt. No. 1.

As a general rule, Federal Rule of Civil Procedure 3 establishes a "commencement rule," stating that "[a] civil action

is commenced by filing a complaint with the court." Importantly, though, Rule 3 does not specifically set an end date for statute of limitations purposes. See Tillman v. Georgia, 466 F. Supp. 2d 1311, 1315 (S.D. Ga. 2006). Rather, the end point for a statute of limitations analysis depends on the basis for federal jurisdiction in a given case. See id. In actions in federal court based on federal question jurisdiction, i.e. jurisdiction stemming from 28 U.S.C. § 1331, "federal law governs both the substance and procedure of the action and generally state law need not be referenced." Id. at 1314. On the other hand, in actions before a federal court based on diversity of citizenship or supplemental jurisdiction, the federal court "must delve into the law as developed around the seminal case of Erie Railroad v. Tompkins, 304 U.S. 64 (1938), which, as an oversimplification, requires that state law govern substance and federal law govern procedure." Id.

Based on these core principles, alongside the Supreme Court's analysis in West v. Conrail, 481 U.S. 35, 39 & 39 n.4 (1987), this Court in Tillman drew a key distinction between federal-question actions and diversity-of-citizenship actions when it comes to discerning the "end date" for a statute of limitations analysis. 466 F. Supp. 2d at 1315-16. For diversity-of-citizenship actions, Rule 3 provides a "necessity to which additional requirements can be added"; if an applicable state service of process rule imposes additional requirements beyond Rule 3's commencement rule, those

12

additional requirements will apply in that diversity case. Id.; see also West, 481 U.S. at 39 n.4 ("When the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period." (citations omitted)).

In contrast, any additional requirements imposed by a state service of process rule, "naturally, do[] not apply to federal-question cases." West, 481 U.S. at 39 n.4; Tillman, 466 F. Supp. 2d at 1315 ("In contrast, the Georgia service requirement would not apply if this Court's jurisdiction were based solely on the federal nature of the claim under 28 U.S.C. § 1331 (hence, . . . federal question . . . cases)."). In actions before a federal district court based solely on federal question jurisdiction, Rule 3's commencement rule sets the relevant end-date for the statute of limitations inquiry. Tillman, 466 F. Supp. 2d at 1315. Based on this, the Court rejects Defendant's contention that the difference between a federal-question and diversity case "is not relevant in determining compliance with the statute of limitations applicable to Plaintiff's claims." Dkt. No. 11-1 at 6.

As noted by Defendant, Plaintiff asserts only federal claims in the present action. Id.; see generally Dkt. No. 1. This means that the Georgia state service-of-process requirements cited by

Defendant do not apply in the present case; both Tillman and West dictate that the end date for Plaintiff's claims is set only by Rule 3's commencement rule. Dkt. No. 11-1 at 4-6; West, 481 U.S. at 39 & 39 n.4; Tillman, 466 F. Supp. 2d at 1315.

Applying *only* the Federal Rules of Civil Procedure to this case, Plaintiff's complaint will be deemed timely if she filed her complaint within the limitations period, "so long as proper service was effected within [ninety] days as provided in [Federal Rule of Civil Procedure 4]." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 823 F.2d 466, 476 (11th Cir. 1987).[4] Plaintiff filed her complaint, dkt. no. 1, on September 16, 2025. See DeKalb Cnty. Sch. Dist. v. M.T.V., 294 F. Supp. 2d 1334, 1337 (N.D. Ga. 2003) (concluding that plaintiff "commenced" its action within the meaning of Rules 3 and 4 when it filed its complaint in federal court). September 16, 2025 is less than ninety days after July 30, 2025, the day Plaintiff received her right-to-sue notice. Dkt. No. 1 at 5. Defendant states that service of process was perfected on

---

[4] Under a prior rendition of Rule 4(m), plaintiffs were required to serve any defendant within 120 days of filing the complaint, rather than the ninety-day timeframe given to plaintiffs under the present version of Rule 4(m). See, e.g., Adams v. Ga. Dep't of Cmty. Health, No. 118CV05319SCJRGV, 2019 WL 13292868, at *1 n.2 (N.D. Ga. Apr. 11, 2019) ("Rule 4(m) was amended, effective December 1, 2015, to reduce the time for perfecting service from 120 days to 90 days." (citations omitted)), report and recommendation adopted, 2019 WL 13292866 (May 1, 2019). Because it was decided before the 2015 Amendments to Rule 4, Am. Postal Workers Union cited the previous 120-day service period. 823 F.2d at 476.

14

November 12, 2025, well-within ninety days of the day Plaintiff filed the complaint. Dkt. No. 11-1 at 2; Am. Postal Workers Union, 823 F.2d at 476.

Therefore, the Court concludes that Plaintiff commenced her action within the applicable ninety-day statute of limitations period. Accordingly, dismissal is not warranted on limitations grounds, and Plaintiff's motion for equitable tolling of the limitations period, dkt. no. 15, is **DENIED as moot.** See Christensen v. City of Decatur, Ga., No. 1:20-CV-4318-AT, 2023 WL 12088619, at *3 (N.D. Ga. Sept. 15, 2023) (denying as moot motion for equitable tolling because plaintiff's second amended complaint was not untimely).

### B.    Failure to Plausibly Allege Claims

Defendant next maintains that Plaintiff fails to plausibly allege a discrimination claim under either the ADEA or Title VII, warranting dismissal. Dkt. No. 11-1 at 8-10. Even construing the complaint liberally, Plaintiff's discrimination allegations form disparate impact claims, not disparate treatment claims. See Dkt. No. 1; Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (outlining the difference between disparate impact and disparate treatment discrimination). This is not only because Plaintiff specifically labels her Title VII claim as a disparate impact claim in the "claims for relief" section of the complaint, but also because Plaintiff's substantive allegations center on the alleged

15

"disparate impact on African Americans, females, and individuals over 40" stemming from Defendant's hiring practices. Dkt. No. 1 at 4-5.

Plaintiff's only reference to disparate treatment appears in her response to Defendant's amended motion to dismiss, wherein she states, in a conclusory manner, that Defendant's conduct "violates established disparate-impact and disparate-treatment standards," dkt. no. 12 at 2. But parties cannot amend a pleading through a response to a motion to dismiss. Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 665 (11th Cir. 2015) (citing Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009)). Accordingly, construed liberally, the complaint's allegations align only with a disparate impact theory of liability, not disparate treatment, and Plaintiff's mention of disparate treatment in her response brief does not change that. Dkt. No. 12 a 2; Dkt. No. 1. Therefore, the question is whether Plaintiff has stated a claim for disparate impact under the ADEA and/or Title VII.

### 1.      ADEA

Turning first to Plaintiff's claim for disparate impact under the ADEA, binding caselaw out of the Eleventh Circuit provides that "an applicant for employment cannot sue an employer [under the ADEA] for disparate impact[.]" Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 961 (11th Cir. 2016); see also Mirand v. Walt Disney Parks & Resorts U.S. Inc., No. 21-12845, 2022 WL

16

2135812, at *2 (11th Cir. June 14, 2022). Plaintiff was an applicant for employment with Defendant, and the complaint gives no indication that Plaintiff was, at the time of the events complained of, an "employee" of Defendant able to assert a disparate impact claim under the ADEA. Dkt. No. 1; Villarreal, 839 F.3d at 970 (concluding that plaintiff failed to state a claim of disparate impact under the ADEA because the ADEA's text "protects employees, not applicants"). Accordingly, Plaintiff's ADEA claim lacks a legal basis, and Count II is **DISMISSED**. See Hyers v. Bacon Cnty., Ga., No. 5:24-CV-75, 2025 WL 3270206, at *7 (S.D. Ga. Nov. 24, 2025) (dismissing four of plaintiff's claims for lack of a legal basis (citing Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007)).

### 2.    Title VII

Regarding Plaintiff's Title VII disparate impact claim in Count I, the Court holds that this claim is not sufficiently pled. As a threshold matter, Title VII does not categorically foreclose a disparate impact claim by a job applicant; rather, the statutory text specifically states that it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees or *applicants for employment* in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42

17

U.S.C. § 2000e-2(a)(2) (emphasis added).

To state a claim for disparate impact discrimination under Title VII, a plaintiff must plausibly allege that the employer-defendant engaged in a facially neutral employment practice that when applied causes "an adverse, disproportionate impact on a statutorily-protected group." E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir. 2000) (citing Griggs v. Duke Power Co., 401 U.S. 424, 431, (1971)).

To establish a prima facie case of disparate impact discrimination, a plaintiff must offer "statistical evidence of a kind and degree sufficient" to demonstrate that a specific or particular employment practice "*caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. at 1274–75 (quoting Watson v. Ft. Worth Bank & Tr., 487 U.S. 977 (1988)). At the pleading stage, however, a plaintiff need not plead specific facts establishing a prima facie case to survive a motion to dismiss. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); see also Lee v. GEO Secure Servs., LLC, No. 22-CV-60689, 2022 WL 17740272, at *6 (S.D. Fla. Nov. 16, 2022), report and recommendation adopted, 2022 WL 17736219 (Dec. 16, 2022). Instead, the complaint must "set out enough factual content to allow a court to draw the reasonable inference" that defendant is liable for the discrimination alleged. E.E.O.C. v. Catastrophe Mgmt. Sols., 852 F.3d 1018, 1023 (11th Cir. 2016) (quotations

18

omitted).

In other words, a claim may escape dismissal on the pleadings if the allegations make it plausible that Plaintiff has a Title VII claim for relief based on disparate impact discrimination—even if Plaintiff has yet to establish a prima facie case. Swierkiewicz, 534 U.S. at 515; Lee, 2022 WL 17740272, at *6. As such, while the prima facie elements need not be established at this point, they nonetheless provide useful guidance as to whether Plaintiff states her Title VII claim. See Lee, 2022 WL 17740272, at *6 (citing Woods v. Lockheed Martin Corp., No. 1:18-CV-3501, 2020 WL 11884822, at *5 (N.D. Ga. 2020)).

Here, Plaintiff states that Defendant's hiring policies have a discriminatory impact. Dkt. No. 1 at 5. More specifically, Plaintiff challenges the use of arrest and indictment (without conviction) records in the hiring process. Id. Plaintiff alleges that Defendant's cancelation of her second interview based on a "purported April 2025 indictment, despite no official background check being conducted and no conditional offer of employment being extended," amounts to discrimination. Id. at 4-5. Plaintiff then vaguely asserts that this employment practice "has a disparate impact on African Americans, females, and individuals over 40, including Plaintiff." Id. at 4. A similar proposition appears a second time in the complaint, too, as Plaintiff claims that "the timing and manner of the cancellation, coupled with the disparate

19

impact on African Americans, females, and individuals over 40, demonstrate that the stated reason [to cancel Plaintiff's interview] is a pretext for unlawful discrimination under Title VII and the ADEA." Id. at 5.

These assertions of disparate impact amount to bare legal conclusions which are not afforded a presumption of truth at this stage. Iqbal, 556 U.S. at 678-79; Lee, 2022 WL 17740272, at *6 (citing Adams v. City of Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014) (stating that the words "disproportionate" and "impermissible impact" were "bare legal conclusions, not facts")). It is not enough to set forth bare assertions of discriminatory impact void of any allegation of statistical disparity or other facts which would make it plausible that such a disparity exists. See Pouyeh v. UAB Dep't of Ophthalmology, 625 F. App'x 495, 497-98 (11th Cir. 2015); Pouyeh v. Bascom Palmer Eye Inst., 613 F. App'x 802, 811 (11th Cir. 2015); see also Lee, 2022 WL 17740272, at *6.

While Plaintiff is correct that detailed statistical evidence is not required to plausibly allege disparate impact discrimination under Title VII, dkt. no. 13 at 4, she cannot escape dismissal without providing even basic statistical allegations or some other "qualitative description of how the alleged disparate impact manifests itself." Lee, 2022 WL 17740272, at *6 (citations omitted); Bartholomew v. Lowe's Home Ctrs., LLC, No.

20

219CV695FTM38MRM, 2020 WL 321372, at *4 (M.D. Fla. Jan. 21, 2020) ("Plaintiffs must allege 'some statistical disparity, however elementary.'"); Muldrow v. Garland, No. 8:21-CV-2674-KKM-JSS, 2022 WL 3716850, at *4 (M.D. Fla. Aug. 29, 2022) ("[E]ven at the motion to dismiss stage, a plaintiff 'usually' must cite 'a statistical disparity' to plausibly allege a disparate impact claim." (citing Pouyeh, 625 F. App'x at 497; Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020))); see also Adams, 742 F.3d at 733 (noting that allegations of "disproportionate" and "impermissible impact," without more, are bare legal conclusions which do not suffice to state a plausible claim for relief (citing Iqbal, 556 U.S. at 678)).

Finally, while Plaintiff does contend that Defendant's actions fell out of line with "EEOC 2012 Guidance requiring individualized assessment of criminal history," she does not provide any additional explanation as to how an alleged failure to comply with this specific source of guidance would result in a disparate impact on a protected group. Dkt. No. 1 at 5. Thus, as currently pled, Plaintiff's allegations in support of her Title VII disparate impact discrimination claim fall short of federal pleading requirements.

### C.   Leave to Amend

In Plaintiff's brief in response to Defendant's amended motion to dismiss, Plaintiff requests leave to amend her complaint

should the Court identify any pleading deficiencies.[5] Dkt. No. 13 at 5. Defendant did not file a reply brief or otherwise argue against this request for leave to amend. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a party's pleading "should be freely given 'when justice so requires.'" Joe Hand Promotions, Inc. v. Rogers, No. CV 2:18-105, 2019 WL 13330713, at *1 (S.D. Ga. Feb. 27, 2019) (citations omitted). As a general matter, the federal rules "favor a permissive approach when parties request leave to amend." Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Woldeab v. DeKalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) ("A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires.'" (citations omitted))). Reasons to deny leave to amend include, for example, "bad faith, undue delay, failure to fix deficiencies despite prior amendments, undue prejudice to opposing party, or futility." Id. at *1 (citing Foman,

---

[5] The Court notes that Plaintiff did not formally move for leave to amend her complaint. But "district courts have broad discretion to allow pleading amendments even when a party does not formally request leave." Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC, 7 F.4th 989, 1000 (11th Cir. 2021); see also Johnson v. Ortiz, No. 20-13547, 2022 WL 1311540, at *3 (11th Cir. May 2, 2022). As such, it is within this Court's discretion to consider the propriety of granting leave to amend as an alternative to dismissal, even without a formal motion.

371 U.S. at 182; United States v. HPC Healthcare, Inc., 723 F. App'x 783, 792 (11th Cir. 2018)).

Here, there is no suggestion of bad faith or undue prejudice such that Plaintiff's request for leave to amend should be denied on those grounds. Id. The same can be said of undue delay, as this case remains in the beginning stages of the litigation process. Id.; see also Edwards v. State Farm Ins. Co., No. 2:25-CV-240, 2026 WL 401503, at *3 (S.D. Ga. Feb. 12, 2026). Further, this would be Plaintiff's first amendment to the complaint, meaning there is no demonstrated "failure to fix deficiencies despite prior amendments," either. Id.; Dkt. No. 1. Futility, however, warrants further discussion. Joe Hand Promotions, 2019 WL 13330713, at *1.

Under Eleventh Circuit caselaw, while "a *pro se* plaintiff generally should be given at least one chance to amend a complaint before the district court dismisses his action with prejudice, leave to amend is *not* required where such amendment would be futile—for instance, because the 'complaint as amended would still be properly dismissed.'" Ortiz, 2022 WL 1311540, at *3 (quoting Silberman v. Mia. Dade Transit, 927 F.3d 1123, 1132–33 (11th Cir. 2019) (quotation omitted)).

In the instant action, Count II has already been dismissed, and there is no indication that Plaintiff would be able to add any additional factual allegations to circumvent Eleventh Circuit precedent governing ADEA disparate impact claims by external job

applicants. See Dkt. No. 13 at 5 (Plaintiff's request for leave to amend, stating only that such leave should be "freely given"); see also Villarreal, 839 F.3d at 970. In short, even if the Court had not dismissed Count II and instead allowed amendment, such amendment would be futile because the claim would still lack a legal basis. See Villarreal, 839 F.3d at 970; Holder v. Statebridge Co., LLC, No. 122CV00115MLBCMS, 2022 WL 22329228, at *4 (N.D. Ga. Aug. 12, 2022) (conducting a similar analysis with respect to a previously dismissed claim).

On the other hand, while it is possible that Defendant could still prevail on a motion to dismiss Count I even with amendment, it is not clear that such amendment would be futile, as the Eleventh Circuit precedent demanding dismissal of Plaintiff's ADEA claim does not extend to her Title VII claim. Villarreal, 839 F.3d at 970; 42 U.S.C. § 2000e-2(a)(2). The present issues plaguing Count I center on insufficient pleading, and it is possible that Plaintiff may be able to remedy these deficiencies by adding additional facts, or perhaps "elementary" statistics, to support each element of a Title VII disparate impact claim. See Lee, 2022 WL 17740272, at *6; Dkt. No. 11-1. Thus, because it is not clear that Count I would still be dismissed with amendment, the Court

24

holds that it would not be futile to grant Plaintiff leave to amend her Title VII claim.[6]

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's amended motion to dismiss. The motion is **GRANTED** as to Count II, and Plaintiff's ADEA claim is **DISMISSED with prejudice**. The motion is **DENIED** to the extent it seeks dismissal of Count I. Plaintiff is **ORDERED** to file an amended complaint within **twenty (20) days** of the date of this Order. Plaintiff is warned that a failure to assert sufficient factual allegations to support a plausible claim for relief will result in dismissal of this case.

CONCLUSION

As discussed above, Defendant's original motion to dismiss, dkt. no. 6, is **DENIED as moot.** Likewise, Plaintiff's motion for equitable tolling, dkt. no. 15, is **DENIED as moot.** Defendant's amended motion to dismiss, dkt. no. 11 is **GRANTED** with prejudice as to Plaintiff's ADEA claim (Count II) and **DENIED** as to

---

[6] Beyond the sufficiency of Plaintiff's allegations, Defendant attempts to argue that it could not have made an adverse employment decision because it canceled the consideration process "in order to avoid making any decision at all." Dkt. No. 11-1 at 8. The decision to remove an applicant for employment from the consideration pool still amounts to a decision not to hire someone seeking a particular position. Failure-to-hire can be a basis for a Title VII claim, meaning Defendant's contention does not undermine the Court's futility analysis. See Joe's Stone Crabs, 296 F.3d at 1273 (discussing the existence of a "traditional failure-to-hire case" under Title VII); Childress v. Caterpillar Logistics Servs., Inc., 369 F. App'x 95, 96 (11th Cir. 2010)(outlining the elements of a discriminatory failure-to-hire claim).

Plaintiff's Title VII claim (Count I). Plaintiff is **ORDERED** to file an amended complaint as to Count I within **twenty (20) days** of the date of this Order. Finally, in light of the Court's present Order ruling on Defendant's amended motion to dismiss, Plaintiff's motion to deny Defendant's amended motion to dismiss, dkt. no. 14, is **DENIED as moot.**

 **SO ORDERED** this 5th day of August, 2026.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA